**Platinum Property Management Services, Inc.**

212 Kelly Mill Rd • Cumming, GA 30040
(678) 710-8056



# 1
# Residency and Financials

## 1.1 LEASE TERMS

This Lease Agreement ("Lease") is made and entered into on **05/06/2025** by and between **METRO ZEN LLC** ("Landlord") and **Natasha N. Powell** ("Tenant"). If more than one individual signs this lease as a tenant, each is jointly and severally responsible for all money due to Landlord under this Lease. Landlord and Tenant may each be referred to individually as a "Party" or collectively as the "Parties."

WHEREAS, Landlord is the title owner of that certain real property located at the following street address:
**4755 Agate Dr
Alpharetta, GA 30022**
("Premises").

WHEREAS, Landlord has engaged Platinum Property Management Services, Inc. ("Property Manager") as the Property Manager and is authorized to act for and on behalf of the Landlord to manage the Premises and may exercise any and all of the rights and powers granted in this agreement to Landlord. Tenant shall communicate with Landlord through the Property Manager and rely on the notices and communications of the Property Manager as having been fully authorized by Landlord.

The name and the address of the Owner of record of the Premises or the person authorized to act for and on behalf of the Owner for the purpose of serving process and receiving demands and notices is as follows: Landlord, as named above, in care of Platinum Property Management Services, Inc., 212 Kelly Mill Rd., Cumming GA 30040.

## 1.2 LEASE START DATE

WHEREAS, Landlord and Tenant mutually desire for Tenant to lease the Premises upon the terms and conditions contained herein; and

NOW THEREFORE, in consideration of the covenants and obligations contained herein and other good and valuable consideration, the receipt and sufficiency of which is acknowledged, the Parties agree as follows:

The Lease Start Date is **08/01/2025** (The day rent starts regardless of physical occupancy date) and the Last Day of Lease to end at 5:00 pm on is **07/31/2026** ("Anniversary Date"). Tenant may terminate the Lease, without penalty, if possession is not granted within (7) days of the Lease Start Date ("Approved Delay Period"). If possession of Premises is not able to be delivered on the Start Date, rent shall be abated on a daily basis until possession is granted. Landlord nor Property Manager shall be held liable for damages in reference to any delay in the delivery of possession of Premises to Tenant. If Tenant takes possession prior to the Lease Start Date listed herein, the terms of the Lease shall apply from day of possession.

## 1.3 RENT & MONTHLY CHARGES

**RENT AMOUNT**: Tenant shall pay **$2,660.00** ("Rent") in advance to Landlord. Rent is due monthly on or before the first day of each month. Rent shall be Payable to *Platinum Property Management Services, Inc.* and submitted online through the Tenant's portal, unless otherwise required to be remitted to Payment Address as defined below.

**MONTHLY CHARGES:**

| | |
|---|---|
| Rent | $2,660.00 |
| **Total:** | **$2,660.00** |

**DUE DATE:** Rent must be paid **electronically through the online Tenant portal** on or before the **first (1st)** day of each month ("Due Date") with an approved Grace Period of 3 days. Payment must be received by Platinum Property Management Services, Inc by **11:59 pm** on the third (3rd) day of each month. Should Tenant fail to pay Rent in full within three days of the Due Date, Tenant shall thereafter pay Rent, along with all outstanding fees and Late Charges, in certified funds delivered to *212 Kelly Mill Rd Cumming, GA 30040* ("Payment Address"). Upon Tenant's failure to pay Rent in full within three days of the Due Date, Tenant shall be unable to pay Rent – or Late Charges - via non- certified funds through any online portal payment option.

**LATE CHARGE**: Rent paid or received after the Grace Period shall be considered late and Tenant agrees to pay a late charge of 10% of the total Rent amount. Rent, including any outstanding fees, not paid in full by the Due Date will be considered late and may only be satisfied in payment by certified funds. Late payment of said funds and fees must be made by certified funds and delivered to the ("Payment Address"). Landlord shall have no obligation to accept any rent paid after the Due Date unless otherwise required by law.

**PARTIAL PAYMENTS**: Tenant may satisfy its monthly Rent obligations via partial payments, so long as the total Rent and fees outstanding are received in full prior to the ("Due Date") as outlined herein. Should the entire monthly Rent not be paid in full by ("Due Date"), then Rent shall be considered late. Tenant agrees that for the remainder of the lease term Tenant portal shall be set to require online payments in full and by ("Due Date").

**SERVICE CHARGE:** Tenant shall immediately pay a service charge of thirty dollars ($30.00) if amount is < = $600 or 5% of check amount if > $600 (plus a late fee if payment has been rejected and not repaid by the third (3rd) day of the month) for all rejected electronic payments. Repayment of said funds and fees must be made by certified funds and delivered to *212 Kelly Mill Rd Cumming, GA 30040* ("Payment Address"). Landlord reserves the right to refuse electronic payments from Tenant after one or more returned payments.

Unpermitted or unlawful use of a credit card may result in an additional fee imposed as a Service Charge, as imposed by financial institution(s), in addition to potential criminal consequences for the unlawful use of a financial instrument.

**APPORTIONMENT OF FUNDS**: Tenant agrees and understands all payments shall be applied to outstanding late fees, NSF fees, administrative fees, legal fees, Tenant chargeback fees or

any other fees due under this lease, then rent.

**RENT REDUCTION RESTRICTED FOR REPAIRS**: Tenant shall not make any repairs/renovations to the home, without prior written approval, or deduct the sums of any approved/unapproved repairs/renovation from any rents or fees due.

## 1.4  SECURITY DEPOSIT

**SECURITY DEPOSIT AMOUNT**: Tenant agrees to pay Platinum Property Management Services, Inc. as "Holder" a Security Deposit at the time of the move in the amount of **$2,000.00** by certified check or money order. The security deposit shall be held in Holder's Escrow Account located at Enterprise Bank and Trust.

**DEPOSIT OF SAME:** Holder shall deposit the Security Deposit into the bank and account referenced herein. All interest earned on the above-referenced account shall belong to the Holder. Holder shall have the right to change the bank in which the Security Deposit is held upon notice to Landlord and Tenant, provided the type of account remains the same. Landlord shall have the right fourteen (14) days prior notice to Holder and Tenant to change the Holder of the Security Deposit and/or the bank account into which the Security Deposit is deposited; provided that the new Holder designated by Landlord is a licensed Georgia real estate broker and the bank account into which the Security Deposit is deposited into is an escrow/trust account.

**RETURN OF SECURITY DEPOSIT:** The balance of the Security Deposit to which Tenant is entitled shall be returned to Tenant by Holder within thirty (30) days after the termination of this agreement or the surrender of the Premises by Tenant, whichever occurs last; provided Tenant meets the following requirements: (1) the full term of the Lease has expired; (2) Tenant has given the required written notice to vacate; (3) the Premises is clean and free of dirt, trash, and debris; (4) all rent, additional rent, fees and charges have been paid in full; (5) there is no damage to the Premises or the Property except for normal wear and tear or damage noted at the commencement of the Lease in the Move-In Move-Out Condition Form; and (6) all keys to the Premises and to recreational or other facilities, access cards, gate openers and garage openers have been returned to Landlord or Agent.

**DEDUCTIONS FROM SECURITY DEPOSIT:** Landlord or Property Manager shall have the right to deduct from the Security Deposit: (1) the costs of repairing any damage to Premises or Property caused by Tenant, Tenant's household or their invitees, licensees and guests, other than normal wear and tear; (2) unpaid rent, utility charges or pet fees; (3) cleaning costs if Premises is left unclean; (4) the cost to remove and dispose of any personal property; (5) late fees and any other unpaid fees, costs, and charges referenced herein.

**MOVE-IN CONDITION:** Tenant, prior to the tender of the Security Deposit, acknowledges receipt of the "Move-In, Move-Out Condition Form" attached to and incorporated in this Lease itemizing any existing damages to the Premises. Tenant has the right, prior to taking occupancy, to inspect the Premises and verify the accuracy of the form. Cosmetic issues will not be corrected, unless negotiated and agreed to in writing prior to move-in. By signing the form, Tenant accepts the property "as is" and that the Premises is in safe and habitable condition.

**MOVE-OUT CONDITION/STATEMENT:** Within three (3) Business days after the date of termination of occupancy, Holder will inspect the Premises and compile a comprehensive list of any damages done to the Premises during Tenant's occupancy ("Move-Out Statement"). Tenant agrees to keep on all utilities to the Premises from date of occupancy through the date of the Move-Out Condition Report. If any utility is off at the time of the Move-Out Condition Report, Tenant agrees to pay to Landlord a Utility Disconnect Fee of **$250.00** as liquidated damages. In addition, Tenant agrees to pay all costs incurred by Landlord to restore and reconnect utilities. If Tenant terminates occupancy without notifying the Holder, Holder may make a final assessment within a reasonable amount of time after discovering the termination of occupancy. Tenant shall have the right to inspect Premises within five (5) business days after the termination of occupancy in order to ascertain the accuracy of the Move-Out Statement. If Tenant agrees with the Move-Out Statement, Tenant shall sign the same. If Tenant refuses to sign the Move-Out Statement, Tenant shall specify in writing, the items on the Move-Out Statement with which Tenant disagrees within three (3) business days, and deliver the list to the Holder. For all purposes herein, a business day shall not include Saturday, Sunday, or Federal Holidays.  If Tenant fails to provide a list to the Holder within 3 days, the Move-Out Statement provided by the Holder shall be deemed accurate.

**DELIVERY OF MOVE-OUT STATEMENT:** Holder shall send the Moveout Statement, along with the balance, if any, of the Security Deposit, to Tenant on or before it is due under state law. The Moveout Statement shall either be delivered personally to Tenant, emailed, or mailed to the last known address of Tenant via first class mail. If the letter containing the payment is returned to Holder undelivered and if Holder is unable to locate Tenant after a reasonable effort, the payment shall become the property of Property Manager ninety (90) days after the date the payment was mailed.

**RIGHT OF HOLDER TO INTERPLEAD SECURITY DEPOSIT:** If there is bona fide dispute over the Security Deposit, Holder may, (but shall not be required to), interplead the funds into an arbitrator upon notice to all parties having an interest in the Security deposit. Holder shall be reimbursed for and may deduct from any funds interpleaded its costs and expenses including reasonable attorneys' fees actually incurred. The prevailing defendant in the interpleader lawsuit shall be entitled to collect its attorneys' fees and court costs and the amount deducted by Holder from the non-prevailing party. All parties hereby agree to indemnify and hold Holder harmless from and against all claims, causes of action, suits and damages arising out of or related to the performance by Holder of its duties hereunder. All parties further covenant and agree not to sue Holder for damages relating to any decisions of Holder to distribute the Security Deposit made in accordance with the requirements of this Lease or to interplead the Security Deposit into a court of competent jurisdiction.

## 1.5  KEYS

Landlord or Property Manager may release keys to or open the Premises to any of the occupants listed herein. Additionally, Tenant agrees to pay a fee of **$100.00** or actual cost, whichever amount is greater, to re-key or replace any locks, mailbox keys, garage remotes, fobs, or access cards if not returned by Tenant at move out, if Tenant terminates Lease early, or at the Tenant's request. If pool keys or cards are not returned or are lost, Tenant agrees to pay a **$250.00** fee for replacement.

## 1.6  ADMINISTRATIVE FEE

Prior to the commencement of occupancy, Tenant shall pay Holder a non-refundable Administrative Fee of **$250.00** to offset Holder's time and expenses related to performing the move-in and move-out assessments required under Georgia law in order to accurately document Premise's condition when Tenant takes possession of

Premises and returns possession to Landlord which helps protect Tenant from unwarranted deductions from Tenant's security deposit upon vacating Premises.

## 1.7  PETS

No pets are allowed or shall be kept in the Premises or on the Property unless a separate pet addendum is attached to and incorporated into this Lease. This includes, but is not limited to, pets which belong to guests or pets which are only staying temporarily, with or without Tenant's knowledge. Should Landlord or Property Manager ever discover an unauthorized pet or animal without documentation within the Premises and/or Property, Tenant is subject to default and agrees to pay an Unauthorized Pet Charge of **$500.00 per pet,** per incident as liquidated damages whether or not the pet is allowed to remain on the Premises and/or Property. Each day the violation occurs shall be deemed a separate and distinct violation. If a pet is allowed to remain on Premise and/or Property, a Pet Addendum is required, and Tenant shall also pay a Pet Fee as outlined in the Pet Addendum.

## 1.8  SMOKING

Premises, including garage and all enclosed covered spaces shall be a smoke free zone and smoking shall not be permitted therein. Should Landlord or Property Manager discover smoking has occurred within the Premises, Tenant agrees to pay an Unauthorized Smoking Charge of **$1000.00** upon discovery in addition to the actual cost of smoke remediation.

## 1.9  UTILITIES

Utilities to the Premises including garbage, electricity and gas, water and sewer, cable and security system monthly charges (if applicable) shall be the responsibility of the Tenant from the day of possession or lease start date, whichever occurs first, until the move out condition report has been completed, unless otherwise outlined in writing. Landlord shall have no responsibility to connect utilities for the Tenant. Tenant shall select and connect all utilities within three (3) business days from the commencement of the Lease and shall keep these utilities on through the completion of the Move-Out Condition Report or Lease termination date, whichever occurs last. In the event Landlord fails to disconnect any utilities serving the Premises after completing the move in inspection, Tenant shall, upon receiving a bill for the same, immediately pay the cost thereof in addition to rent. In addition, Tenant shall immediately transfer said utility to Tenant's name.

**UTILITY DISCONNECTION CHARGE**: In order for Landlord or Landlord's Property Manager to perform an accurate move out condition report, utilities to the Premises need to be on. Should Tenant disconnect the utilities prior to the Move-Out Condition Report or Lease Termination date, whichever occurs last, Tenant agrees to pay to Landlord a Utility Disconnect Fee of **$250.00** as liquidated damages. In addition, Tenant agrees to pay all costs incurred by Landlord to restore and reconnect utilities.

## 1.10  DEMAND POSTING

Pursuant to HB 404, as codified in 2024 in part via amendments to O.C.G.A. 44-7-50, Tenant acknowledges Landlord incurs additional costs in order to provide Tenant certain statutorily required forms of notice ("Demand Notice"). Should Landlord provide Tenant such Demand Notice, Tenant agrees that a charge of **$100**, per Demand Notice, shall be considered as an administrative legal fee, and is due & payable, in order to satisfy and cure the Demand Notice.

By initialing below, you acknowledge and agree to the terms in Section 1.


X_____
Natasha N. Powell

# 2
## General

## 2.1  NOTICES

**REQUIRED NOTICE:** Either party must provide the other party with a **60 days' notice** to terminate the Lease prior to the Anniversary Date or subsequent Anniversary Dates.

**GENERALLY:** All notices given hereunder shall be in writing, legible and signed by the party giving the notice. In the event of a dispute regarding notice, the burden shall be on the party giving notice to prove delivery. The requirements of this notice paragraph shall apply even prior to this Agreement becoming binding. Notices shall only be delivered: (1) in person; (2) by courier, overnight delivery service or by certified or registered U.S. mail (hereinafter collectively "Delivery Service"); or (3) by e-mail. The person delivering or sending the written notice signed by a party may be someone other than that party.

**DELIVERY OF NOTICE:** A notice to a party shall be deemed to have been delivered and received upon the earliest of the following to occur: (1) the actual receipt of the written notice by a party; (2) in the case of delivery by a Delivery Service, when the written notice is delivered to an address of a party set forth herein (or subsequently provided by the party following the notice provisions herein), provided that a record of the delivery is created; (3) in the case of delivery electronically, on the date and time the written notice is electronically sent to an e-mail address of the party. Notice to a party shall not be effective unless the written notice is sent to the address or e-mail address of the party (or subsequently provided by the party following the notice provisions herein).

**AUTHORIZED TO ACCEPT NOTICE:** Property Manager shall be authorized to receive notices on behalf of Landlord and notices delivered to the Property Manager shall be deemed as notice to Landlord provided the notice is delivered to the Property Manager following the notice proceedings set forth here to Agent's address or e-mail address provided below (or subsequently provided by the Property Manager following the notice provisions herein):

212 Kelly Mill Rd
Cumming, GA 30040

## 2.2  EARLY TERMINATION

**EARLY TERMINATION BY TENANT**: Provided Tenant is not in default hereunder at the time of giving notice, has complied with all of the provisions of the Lease, is current in all monies due, and termination is as of the last day of a calendar month, Tenant shall have the right to terminate the Lease early by: (1) giving Landlord no less than a 60 day advanced notice of termination; (2) Paying all

monies due through the date of termination; (3) Paying to Landlord an additional amount equal to two (2) months of rent in **certified funds**; (4) Paying to Property Manager an Early Termination Administrative Fee equal to one (1) month's rent in **certified funds**; and (5) returning the Premises in a clean, rent ready condition. Fees due to terminate lease must be remitted at the time of giving notice. Tenant's election of early termination shall not relieve Tenant of responsibilities and obligations regarding damage to Premises and/or Property. Tenant may not apply the security deposit toward the payment of any of Tenant's financial obligations set forth herein.

**MILITARY ACTIVATION:** Aside from any provision to the contrary contained herein, if Tenant is called to active duty in the military during the term of this Lease, Tenant shall present to Landlord or Property Manager the official orders activating Tenant. In that event, this Lease shall be controlled by the Service Member's' Civil Relief Act of 2003 as amended in 50 U.S.C.A. § 50-534.

**ACTIVE MILITARY:** If Tenant is active duty military and presents to Landlord or Property Manager a copy of official orders of transfer to another military location, Tenant shall be required to give Landlord or Property Manager the notice to terminate early set forth elsewhere herein but shall have no obligation to pay an Early Lease Termination Administrative Fee or additional rent other than for thirty (30) days after Tenant gives notice under this section. This does not relieve Tenant of their responsibility for the cost(s) of repairing damage to Premises or Property caused by an act or omission of Tenant.

**EARLY TERMINATION BY LANDLORD:** Landlord may terminate the Lease prior to the lease expiration date and in such event, Tenant agrees to vacate the Premises subject to the following: (1) Landlord shall give Tenant no less than a 60 day written notice of the early termination and to vacate (in which case Tenant shall still owe rent through the notice period); and (2) After Tenant has vacated the Premises, Landlord shall credit to Tenant an Early Termination Fee equal to one (1) month's rent as an accommodation for the inconvenience of moving early. This credit will be applied to the Tenant's account at the time the Tenant vacates the Premises and shall be included with any applicable security deposit refund. Early Termination Fee shall first be applied against any monies owing from the Tenant with the balance thereafter being paid to Tenant by Landlord. The foregoing shall not relieve the Tenant of his or her responsibilities and obligations regarding any damage to the property. If this Lease is terminated due to a default by the Tenant or destruction of the Premises, then this early termination section shall not apply.

**TERMINATION OF RESIDENTIAL LEASE AFTER ISSUANCE OF CIVIL FAMILY VIOLENCE ORDER OR CRIMINAL FAMILY VIOLENCE ORDER**

**Universal Citation:** GA Code § 44-7-23 (2020)

1. As used in this Code section, the term:
    1. "Civil family violence order" means:
        1. Any protective order issued pursuant to Article 1 of Chapter 13 of Title 19, provided that the respondent was present or had notice of the hearing that resulted in the issuance of such order; or
        2. Any ex parte temporary protective order issued pursuant to Article 1 of Chapter 13 of Title 19, provided that it is accompanied by a police report showing a basis for such order.
    2. "Criminal family violence order" means:
        1. Any order of pretrial release issued as a result of an arrest for an act of family violence; or
        2. Any order for probation issued as a result of a conviction or plea of guilty, nolo contendere, or first offender to an act of family violence.
    3. "Family violence" shall have the same meaning as set forth in Code Section 19-13-1.
2. A tenant may terminate his or her residential rental or lease agreement for real estate effective 30 days after providing the landlord with a written notice of termination when a civil family violence order or criminal family violence order has been issued:
    1. Protecting such tenant or his or her minor child; or
    2. Protecting such tenant when he or she is a joint tenant, or his or her minor child, even when such protected tenant had no obligation to pay rent to the landlord.
3. The notice to the landlord pursuant to subsection (b) of this Code section shall be accompanied by a copy of the applicable civil family violence order or criminal family violence order and a copy of the police report if such order was an ex parte temporary protective order.
4. Upon termination of a residential rental or lease agreement under this Code section, the tenant may occupy the real estate until the termination is effective. Such tenant shall be liable for the rent due under such agreement prorated to the effective date of the termination, payable at such time as would have otherwise been required by the terms of such agreement, and for any delinquent or unpaid rent or other sums owed to the landlord prior to the termination of such agreement. The tenant shall not be liable for any other fees, rent, or damages due to the early termination of the tenancy as provided for in this Code section. Notwithstanding any provision of law to the contrary, if a tenant terminates a residential rental or lease agreement pursuant to this Code section 14 or more days prior to occupancy, no damages or penalties of any kind will be assessable.
5. This Code section shall apply to all residential real estate rental or lease agreements entered into on or after July 1, 2018, and to any renewals, modifications, or extensions of such agreements in effect on such date. This Code section shall not be waived or modified by the agreement of the parties under any circumstances.

(Code 1981, §44-7-23, enacted by Ga. L. 2018, p. 969, § 2/HB 834.)

## 2.3 ABANDONMENT

If Tenant vacates the Premises before the Anniversary Date, and fails to follow the Early Termination clause as stated above, this shall be called an abandonment, and Tenant will be in default of this Lease and damages will include all expenses incurred by the Owner and/or Property Manager to have the Premises re-rented, including, but not limited to, lost rent to the day of re-occupation, utilities and lawn care during vacancy, Procurement Fee and advertising to re-rent the Premises, plus any damages to the Premises, including the sum of one (1) month's rent, to be paid to Property Manager; said direct damages incurred by the Property Manager due to Tenant's abandonment being difficult or impossible of estimation; Landlord and Tenant intending to provide for said damages by this clause; and said sum being a reasonable pre-estimate of the probable loss suffered by Property Manager.

If at any time during the term of this Lease, Tenant abandons the Premises or any part thereof, Landlord may, at Landlord's option,

obtain possession of the Premises in the manner provided by law, and without becoming liable to Tenant for damages or for any payment of any kind. Landlord may, at Landlord's discretion, as Property Manager for Tenant, re-rent the Premises, or any part thereof, for the whole or any part of the unexpired term, and may receive and collect all Rent payable by virtue of such re-renting, and, at Landlord's option, hold Tenant liable for any difference between the Rent that would have been payable under this Lease during the balance of the unexpired term, if this Lease had continued in force, and the net Rent for such period realized by Landlord by means of such re-renting. If Landlord's right of reentry is exercised following abandonment of the Premises by Tenant, then Landlord shall consider any personal property belonging to Tenant and left on the Premises to also have been abandoned, in which case Landlord may store and dispose of all such personal property subject to requirements imposed by Georgia law.

## 2.4 HOLDING OVER

Tenant shall have no right to remain in the Premises after the termination or expiration of this Lease. Should Tenant fail to vacate the Premises upon the termination or expiration of this Agreement, Tenant shall pay **$150.00** ("Hold Over Fee") for every day the Tenant holds over beyond the expiration or termination of this Lease. Acceptance of the Hold Over Fee by Landlord shall in no way limit Landlord's right to treat Tenant as a Tenant at sufferance for unlawfully holding over and to dispossess Tenant for the same. The increased rent during such holding over is intended to partially compensate Landlord for losses, damages, and expenses, including frustrating and delaying Landlord's ability to secure a replacement tenant or to sell the Property. If Landlord loses a prospective tenant or buyer because Tenant fails to vacate the Property upon the expiration of the Lease, Tenant will be liable for such monetary damages as Landlord can prove because of Tenant's wrongful failure to vacate.

## 2.5 LEASE AMENDMENTS

Tenant may not sublet Premises in whole or in part or assign this Lease without the prior written consent of Landlord which consent may be withheld for any reason or for no reason. This Lease shall create the relationship of Landlord and Tenant between the parties hereto. Tenant is specifically prohibited from offering all or part of the Premises for short-term rental such as through AirBnB, VRBO, or other such sites or programs, regardless of any local laws that may be or have been enacted. Any person who is not a Tenant, as defined herein, who occupies any portion of the Premises, for any period of time whatsoever, for any compensation or consideration whatsoever, is NOT a guest, and such occupancy constitutes unauthorized subletting or assignment, which is a substantial and material breach of this Agreement. Should Landlord consent to modifying the names of the Tenant on this Lease, or any other terms, Tenant agrees to pay a "Fee to Prepare Lease Amendment" of **$300.00**.

## 2.6 USE

Tenant shall have the right to use the common areas of the Property such to: (a) all rules, regulations and covenants applicable thereto; and (b) the common area being reduced, modified, altered or being made subject to further use restrictions adopted by Landlord, in its sole discretion, or any community association responsible for the same. While Tenant may use and enjoy the Premises to the fullest extent permitted in this Lease, no estate or permanent legal interest in the Premises is being transferred or conveyed by Landlord to Tenant herein. Landlord shall have the right to assign this Lease to a subsequent owner of the Premises.

Premises shall be used for Residential purposes only and shall be occupied only by those persons listed in this Agreement. Premises and Property shall be used by Tenant and Tenant shall cause all occupants of the Premises and their guests, invitees, licensees and contractors of Tenant to use the Premises and Property in accordance with all federal, state, county, and municipal laws and ordinances. Tenant shall not sublet any part of the Premises or Property. No trade or business uses shall be permitted except with the prior written consent of Landlord or Property Manager and provided such use is permitted under applicable zoning laws. Tenant agrees any violation or noncompliance of the above resulting in fines, sanctions or penalties being imposed against Landlord or Property Manager shall be the financial responsibility of and immediately paid by the Tenant. Tenant shall be responsible for ensuring Tenant, all occupants of the Premises and their respective invitees, licensees, contractors and guests comply with the Rules and Regulations set forth below and not engage in any activity while on Property or in Premises that is unlawful, would endanger the health and safety of others or would otherwise create a nuisance. In the event Tenant or any of the above-named parties are arrested or indicted for any unlawful activity occurring on Property or for a felony occurring off of the Property and said charges are not dismissed within thirty (30) days thereafter, Tenant shall be deemed to be in default of this Lease and Landlord or Property Manager may, but shall not be obligated to, terminate this Lease upon notice to Tenant. For the purpose of this Lease, an unlawful activity shall be deemed to be any activity in violation of local, state or federal law.

If the Premises or a part of the Property are subject to a HOA Bylaws, Declaration of Condominium, a Declaration of Covenants, Conditions and Restrictions, rules and regulations, and/or other similar documents (hereinafter collectively 'Community Association Documents'). Tenant agrees to strictly comply with all use and occupancy restrictions contained therein in using the Premises, Property, Community amenities, and/or common areas. In the event any fine or specific assessment is levied against the Premises or the Owner thereof as a result of Tenant violating the use and occupancy restrictions set forth in the Community Association Documents, Tenant shall immediately pay the same to Landlord in addition to rent. Tenant is responsible for locating and reviewing said documents.

## 2.7 APPLIANCES

Any appliances noted on the "Move-In, Move-Out Condition Form" are provided by Landlord as part of this Agreement and included in this Lease. Tenant acknowledges that Tenant has inspected these appliances and that the same are in good working order and repair.

## 2.8 LEAD-BASED PAINT

For any Premises built prior to 1978, Tenant acknowledges that Tenant has received and read the Protect Your Family from Lead in Your Home, and signed the Lead-Based Paint Exhibit attached hereto and incorporated into this Lease. Any approved painting or other alterations by Tenant that disturb lead-based paint shall be performed in accordance With the EPA's Renovate Right brochure (https://www.epa.gov/lead/pubs/renovaterightbrochure.com).

## 2.9 RENEWAL

**AUTOMATIC RENEWAL**: Upon the first day of the calendar month following the Anniversary Date, and subsequent Anniversary Dates, the Lease shall automatically renew for twelve (12) months, unless either party provides the other written notice, sent by certified, registered mail or email, at least (60) days prior to

5

an Anniversary Date, of their desire to not renew under the same terms. Verbal notice is not considered sufficient in any regards. The rent will automatically increase at **minimum 5%** over the immediately preceding rate rounded up to the next $5.00 increment. Landlord or Property Manager shall have the right to increase the rent above 5% upon notice being given to Tenant sixty (60) to ninety (90) days prior to the end of the then applicable Lease Term or Renewal Term. Upon the receipt of such notice, Tenant shall notify the Property Manager of Tenant's decision either to: (1) terminate the Lease effective upon the end of the current term of the Lease; or (2) accept the increase in the rent set forth elsewhere in the Lease at least sixty (60) days prior to the lease end date. If Tenant fails to timely respond to the notice of rent increase set forth elsewhere herein, then Tenant shall be deemed to have accepted the increase in rent for the subsequent Renewal Term. After the expiration of **5** Renewal Terms, Tenant must execute a new lease to remain in the Property.

**LEASE RENEWAL FEE:** Tenant agrees to pay a fifty dollar **($50.00)** administrative fee for each lease renewal.

## 2.10 DISPUTE SETTLEMENT & NON-DISPARAGING

Parties to the Lease Agreement seek to settle any and all grievances or disputes by the following steps:

1. First, address the concern directly to the other party.
2. Secondly, meet at Property Manager's office to address any unresolved issues in person.
3. Any party disparaging, or encouraging others to disparage, the other publicly or through social media, electronic or written review services, the Better Business Bureau or any other similar agency may result in legal action towards that party and is responsible to pay legal fees to remove the disparaging comments/posts.

## 2.11 DESTRUCTION OF PROPERTY/PREMISES

If flood, fire, storm, mold, other environmental hazards that pose a risk to the occupants' health, other casualty or Act of God shall destroy (or so substantially damage it as to make it be uninhabitable) Tenant's damages shall be liquidated and limited to an abatement of rent from the date of such destruction until the Premises are habitable again, it being agreed that the same is a reasonable pre-estimate of Tenant's actual damages and is not a penalty. Notwithstanding the above, if the Premises cannot be made habitable within thirty (30) days of such destruction, or if Landlord notifies Tenant in writing that the Premises cannot be made habitable within this timeframe, then either Landlord or Tenant may terminate this Lease, upon notice to the other party. Such notice of termination must be given within fourteen (14) days from the earlier of either the Landlord not timely making the Premises habitable or notice being given by Landlord to Tenant that the Premises will not be able to be made habitable within thirty (30) days from the destruction of the Premises. If such notice of termination is not timely given, then the parties' right to terminate due to the destruction of the Premises shall be waived, and Tenant shall reoccupy the Premises upon receipt of notice from Landlord that the Premises are now habitable. If Premises are damaged but not rendered wholly untenable by flood, fire, storm, or other casualty or Act of God, rent shall abate in proportion to the percentage of Premises which has been damaged and Landlord shall restore Premises as soon as is reasonably practicable whereupon full rent shall commence. Rent shall not abate nor shall Tenant be entitled to terminate this Lease if the damage or destruction of Premises, whether total or partial, is the result of the negligence of Tenant or Tenant's household or their invitees, licensees, or guests.

## 2.12 MISCELLANEOUS

**TIME OF ESSENCE:** Time is of the essence of this Lease.

**NO WAIVER:** Any failure of Landlord to insist upon the strict and prompt performance of any covenants or conditions of this Lease or any of the Rules and Regulations set forth herein shall not operate as a waiver of any such violation or of Landlord's right to insist on prompt compliance in the future of such covenant or condition, and shall not prevent a subsequent action by Landlord for any such violation. No provision, covenant or condition of this Lease may be waived by Landlord unless such waiver is in writing and signed by Landlord.

**DEFINITIONS:** Unless otherwise specifically noted, the term "Landlord" or "Agent" as used in this Lease shall include its representatives, heirs, agents, assigns, and successors in title to Property and the term "Tenant/Tenant" shall include Tenant's heirs and representatives. The terms "Landlord," "Agent," and "Tenant/Tenant" shall include singular and plural, and corporations, partnerships, companies or individuals, as may fit the particular circumstances.

**JOINT & SEVERAL OBLIGATIONS:** The obligations of Tenant set forth herein shall be the joint and several obligations of all persons occupying the Premises.

**ENTIRE AGREEMENT:** This Lease and any attached addenda and exhibits thereto shall constitute the entire Agreement between the parties and no verbal statement, promise, inducement or amendment not reduced to writing and signed by both parties shall be binding.

**ATTORNEY'S FEES, COURT COSTS, & COSTS OF COLLECTION:** Whenever any monies due hereunder are collected by law or by attorney at law to prosecute such an action, then both parties agree that the prevailing party will be entitled to reasonable attorney's fees, plus all court costs and costs of collection.

**INDEMNIFICATION:** Tenant agrees to indemnify and hold Landlord and Property Manager harmless from and against any and all injuries, damages, losses, suits, claims, and death against Landlord and/or Property Manager arising out of or related to: (1) Tenant's failure to fulfill any condition of this Lease; (2) any damage or injury happening in or to the Premises and the Property or to any improvements thereon as a result of the acts or omissions of Tenant or Tenant's family members, invitees or licensees, including, but not limited to Tenant's failure to immediately notify Landlord of any dangerous condition on or in the Premises; (3) Tenant's failure to comply with local, state or federal law; (4) any judgment, lien or other encumbrance filed against the Premises or Property as a result of Tenant's actions and any damage or injury happening in or about the Premises or Property to Tenant or Tenant's family members, invitees or licensees (except if such damage or injury is caused by the intentional wrongful acts of Landlord or Broker); (5) failure to maintain or repair equipment or fixtures, where the party responsible for their maintenance uses commercially reasonable efforts to make the necessary repairs and Tenant covenants not to sue Landlord or Property Manager with respect to any of the above-referenced matters. In addition to the above, Tenant agrees to hold Property Manager harmless from and against Owner of the Property not paying or keeping current with any mortgage, property taxes or homeowners association fee's on the Property or not fulfilling the Owners obligations under this lease.

**WAIVER OF HOMESTEAD RIGHTS:** Tenant for himself and his

family waives all exemptions or benefits under the homestead laws of Georgia.

**LIMITATION OF RESPONSIBILITY:** Resident agrees that Landlord and Agent of Landlord shall not be liable for any bodily injury to or death of any person, or loss of damage to any property belonging to, Resident or its employees, agents, contractors, invitees, licensees, or any other person in, on or about the Premises unless resulting from the actual willful misconduct of Landlord or its own employees. In no event shall Landlord or Agent of Landlord be liable for any damage, including direct, indirect, special, or consequential damage, which is caused by steam, water, rain or snow or other thing which may leak into, issue, or flow from any part of the property or from the pipes or plumbing works, including, the sprinkler system (if any) therein or from any other place or for any damage caused by or attributed to the condition or arrangement of any electric or other wiring or of sprinkler heads (if any) or for any such damage caused by anything done or omitted by Resident or any other occupant or user of the Property (or any of their employees, agent, contractors, customers, or invitees).

**GOVERNING LAW:** This Lease may be signed in multiple counterparts and shall be governed by and interpreted pursuant to the laws of the State of Georgia. This Lease is not intended to create an estate for years on the part of Tenant or to transfer to Tenant any ownership interest in the Premises or Property.

**RENTAL APPLICATION:** Only those people indicated on Tenant's rental application are permitted to reside at the Premises, with the exception of any minor children born to, or adopted by, Tenant. If it is later discovered that the information disclosed on rental application by Tenant was incomplete or inaccurate at the time it was given, Tenant shall be in default of this Lease and Landlord or Property Manager may pursue any and all remedies regarding said default.

By initialing below, you acknowledge and agree to the terms in Section 2.

X
Natasha N. Powell

# 3
## Tenant's Responsibilities

### 3.1  DEFAULT

Tenant shall be in default under this lease if Tenant fails to comply by any of the terms, conditions, or obligations of this lease. Landlord shall provide Tenant written notice of the non-compliance and intention of Landlord to terminate the Lease by reason thereof, and Tenant shall have three (3) days to cure such non-compliance. If Tenant fails to cure the non-compliance, they shall be considered in default and Landlord or Property Manager may, at their discretion, terminate this lease by providing written notice of the same to Tenant and may enter upon and take possession of the Premises, at their discretion, and re-rent the Premises at the best rental price obtainable by reasonable effort, and for any term, and for any rent, upon such terms as Landlord or Property Manager deems proper.

Furthermore, Tenant will not be released from any liability for any amount due under this lease. Upon the default, all rent and other sums owed to Landlord and Property Manager through the end of the lease in addition to any additional cost to gain possession of the home shall be due immediately and payable.

Upon default by Tenant, Platinum Property Management Services, Inc. or Property Manager, is authorized to institute on behalf of Landlord, all legal actions or proceedings for the enforcement of any Lease term, for the collection of rent or other income for the Premises or for the eviction of Tenant or Occupants from the Premises. Platinum Property Management Services, Inc., Property Manager, is authorized to sign and serve such notices on behalf of Landlord as it deems necessary for enforcement of the Lease and Tenant will accept such notice from Platinum Property Management Services, Inc., Property Manger, as equivalent to receiving the same notice from Landlord.

### 3.2  REPAIRS & MAINTENANCE

Tenant has inspected Premises and acknowledges it is in good condition, fit for Residential occupancy, all major systems and appliances are in working order. Tenant shall promptly notify Landlord or Property Manager of a dangerous condition or need for maintenance existing in Premises or on the Property. Non-emergency maintenance items shall be notified through the tenant portal. Upon receipt of notice from Tenant, Landlord or Property Manager shall, within a reasonable time period thereafter, repair the following: (1) all defects in Premises or Property which create unsafe living conditions or render Premises untenable; and (2) to the extent required by state law, such other defects which, if not corrected, will leave Premises or Property in a state of disrepair. Except as provided above, Tenant agrees to maintain Premises in the neat, sanitary and clean condition free of trash and debris. All of Tenant's trash shall be kept in designated trash containers and removed from the Premises at least once each week. Tenant obligation to maintain the Premises includes, but not limited to, replacing any light bulbs which fail during the Lease Term and regularly changing HVAC filters. Tenant shall be responsible for any clogged plumbing within the Premises. Landlord shall be responsible for all other plumbing issues between the Premises and the street or the Premises and the septic tank or in any plumbing line outside of the Premises which exclusively serves the Premises. Tenant shall be responsible for any damages to the Premises and/or Property caused by Tenant's abuse or neglect of the Premises/Property. Any expenses incurred by Landlord or Property Manager to remedy any violations of this provision shall be paid by Tenant in addition to rent within fourteen (14) days of the receipt of an invoice. If Tenant submits a service request or repair request, and the contractor responding to this request determines that the item is working correctly, Tenant agrees to reimburse Landlord or Property Manager for the amount for the contractor's invoice.

### 3.3  SMOKE DETECTOR

Tenant acknowledges Premises is equipped with a smoke detector(s) in good working order and repair. Tenant agrees to be solely responsible to check the smoke detector(s) and replace batteries every thirty (30) days. Tenant will notify Landlord or Property Manager immediately if the smoke detector(s) are not functioning properly.

### 3.4  FREEZING OF PIPES

To help prevent frozen pipes, Tenant agrees when the temperature outside falls below 32°F, Tenant shall: (1) leave the thermostat regulating the heat serving Premises in an "on" position and set

to a minimum of 60°F; and (2) leave the faucets dripping. Tenants are responsible to know how to winterize the home during freezing temperature warnings. Information can be found online at www.platinumrentalproperty.com

### 3.5  MOLD & MILDEW

Tenant acknowledges mold and/or mildew can grow in any portion of the Premises or Property that are exposed to elevated levels of moisture and some forms of mold and mildew can be harmful to their health. In signing this lease, Tenant has first inspected the Leased Premises and certifies Tenant has not observed mold, mildew or moisture within the Lease Premises. Tenant therefore agrees to regularly inspect the Premises for mold and/or mildew and immediately report to Landlord or Property Manager any water intrusion problems, mold and/or mildew (other than in sinks, showers, toilets and other areas designed to hold water or to be wet areas). Tenant shall allow Landlord to evaluate and make recommendations and/or take corrective action. Tenant shall not block or cover any heating, ventilation, or air conditioning ducts located in the Premises. It is the Tenant's responsibility to control the temperature in the home and shall keep the air conditioning set below 76 degrees during hot days to protect the home. Mold thrives at temperatures between 77°F and 86°F. Hot summer weather encourages mold growth. Emphasis is properly placed on prevention of moisture and on good housekeeping, ventilation and moisture control. Tenant relieves Landlord and Property Manager from any liability for any bodily injury or damages to property caused by or associated with moisture or the growth of or occurrence of mold or mildew on or in the Leased Premises. In addition, execution of this Lease by Tenant constitutes acknowledgement by Tenant that control of moisture and mold prevention in the Leased Premises are integral to its Lease obligations. Tenant acknowledges having read the "A Brief Guide to Mold, Moisture in Your Home" found at www.epa.gov and shall follow the recommendations contained herein.

### 3.6  LAWN & EXTERIOR MAINTENANCE

Tenant shall keep the lawn mowed and edged, beds free of weeds, shrubs trimmed, trash and grass clippings picked up on a regular basis (minimum of once every two weeks in growing season and fall leaf season) and shall keep the Premises, including the yard, lot, grounds, walkways and driveway clean and free of rubbish, trash and debris unless otherwise outlined in writing.

### 3.7  PEST CONTROL

Pest Control shall be the responsibility of and paid for by the Tenant. Landlord will be responsible for termite and rodent control. The term "pest control" herein means addressing any problems in the Premises with ants, cockroaches, spiders and other insects and preventing the infestation thereof and the party responsible for the same is set forth elsewhere herein. Tenant shall also be responsible for the immediate treatment of any bed bugs in the Premises by a licensed Georgia pest control operator and the immediate and permanent removal from the Premises of any mattresses, bedding, clothing and other similar items that may contain bed bugs or bed bug larvae.

### 3.8  ACCESS CODES

Landlord shall provide Tenant with all access codes or remotes to entrance gates and security systems, if any, located on the Premises or Property. Tenant will provide Landlord with all access codes or remotes currently in use for entrance gates and security systems located on the Premises or Property within three (3) business days of vacating the property. Tenant's failure to provide access codes will result in a minimum $250.00 charge.

### 3.9  LIQUIDATED DAMAGES

It is acknowledged by Landlord and Tenant the actual damage costs are hard to calculate and the liquidated damages referenced in the Lease are a reasonable pre-estimate of the party's actual damages and not a penalty. All damages must be paid in certified funds.

**DISPOSSESSORY ACTION:** The Landlord or Property Manager can file a dispossessory action against Tenant if any rent or other fees and charges owed by the Tenant are not paid in full by the Due Date. In the event a dispossessory action is filed against the Tenant, Tenant shall pay a Dispossessory Action Admin Fee of **$450.00** plus an Administrative Fee of **$200.00** in addition to any additional costs incurred in filing said dispossessory as well as costs to gain possession of the home per occurrence as liquidated damages.

### 3.10  RIGHT OF ACCESS

**RIGHT OF ACCESS**: Upon 24 hours advance notice to Tenant, Landlord accompanied by Landlord's agent(s), vendors, and employees shall have the right Monday through Saturday from 9:00 a.m. to 8:00 p.m. and Sunday from 11:00 a.m. to 6:00 p.m., except in the case of emergency, to access the Premises to inspect, repair, and maintain the same and/or to show the Premises to prospective Tenants and buyers whether Tenant is present. In addition, Landlord accompanied by Landlord's agent(s), vendors, and employees may enter the Premises at any time to investigate potential emergencies, evidence of water leaks, fire, smoke, foul odors, sounds indicating the possibility of an injured person, pet or animal and other similar evidence of an emergency shall all be sufficient grounds for Landlord accompanied by Landlord's agent(s), vendors, and employees to enter Premises and Property for this purpose.

**SHOWING/SIGNAGE**: During the last sixty (60) days of the Lease term, and during any period when Premises is being leased month to month, Landlord, Landlord's agents, or any licensed real estate Property Manager may place a "for rent" or "for sale" sign in the yard or on the exterior of the Premises or on the Property. A lockbox may be installed on the Premises or Property to show prospective Tenants or purchasers during the hours listed above. Tenant agrees to cooperate with Landlord, Landlord's agents, and any licensed real estate Property Manager who may show the Premises to prospective Tenants or buyers. Tenant shall use prudent judgement in securing keys, jewelry, prescription drugs and other valuables and agrees to hold Landlord and Landlord's agents harmless for any loss thereof.

**PHOTOS/VIDEOS:** Tenant agrees photos/videos may be taken from interior or exterior of the Premises or Property and used or distributed for any print or online marketing purposes. Landlord and/or Property Manager will have all rights to any and all photos/videos taken on the Premises or Property.

**DENIAL OF ACCESS**: For each occasion the right of access is denied (described above), Tenant shall pay a Denial of Access Fee of **$100.00** as liquidated damages.

By initialing below, you acknowledge and agree to the terms in

Section 3.


X _____NP_____
Natasha N. Powell

# 4
# Rules & Regulations

## 4.1 RULES & REGULATIONS

Tenant shall be responsible for violations of these Rules and Regulations caused by Tenant, any occupant of the Premises and their guests, invitees, licensees and contractors.

1. Tenant is prohibited from adding, changing or in any way altering locks installed on the doors of the Premises without prior written permission of Landlord. Any additional hardware will be considered damage. Replacement of lost keys shall be responsibility of Tenant. If Landlord must provide a key copy, there shall be a replacement fee of $25.00.
2. Motor vehicles shall only be parked on the paved portions of the Premises and the Property intended for use as parking spaces and whose use is not reserved to others. RV's, boats, trailers are not permitted without prior written approval.
3. Motor vehicles with expired or missing license plates, non-operative vehicles and vehicles which drip oil or antifreeze shall not be parked or kept on the Premises or the Property.
4. No waterbeds or trampolines shall be permitted on the Premises or Property.
5. No space heaters or window air conditioning units shall be used to heat or cool Premises except with the written consent of Landlord or Agent.
6. Tenant shall comply with Homeowner Association Covenants governing the subdivision, all local ordinances, and all posted rules and regulations governing the use of any recreational facilities, community amenities, or common areas, if any, located on the Premises or Property. Tenant is responsible to contact Association for latest copy of Covenants. Most covenants can be found online by searching the neighborhood. Tenant further agrees to provide any and all evidence required, at the sole determination of Landlord, that any Homeowner Association violation is cured within the allotted time frame set forth within any notice provided by the Homeowner Association, or within a 3-day cure period. Tenant is responsible for a seventy-five dollar (**$75.00**) administrative fee for any Landlord supervision surrounding the Homeowner Association violation should said violation not be timely cured.
7. Tenant shall be prohibited from improving, altering or modifying the Premises or Property (including painting and landscaping) during the term of this Lease without the prior written consent of the Landlord. Any improvements, alterations or modifications approved by Landlord or Property Manager shall be deemed to be for the sole benefit of Tenant and Tenant expressly waives all rights to recover the cost or value of the same. Landlord or Property Manager shall have the right but not the obligation to condition the approval of requested modifications on Tenant removing the same prior to the end of the Lease Term and restoring the affected area to a condition equal to or better than it was prior to the modification.
8. No window treatments currently existing on any windows shall be removed or replaced by Tenant without the prior written consent of Landlord. No sheets, blankets, towels, cardboard, newspaper or other make-shift temporary window treatments shall be used on the Premises or Property.
9. Other than normal household goods in quantities reasonably expected in normal household use, no goods or materials of any kind or description which exceed the normal structural weight loads for the Premises or Property, are combustible or would increase fire risk or increase the risk of other injuries or casualties, shall be kept or placed on the Premises or Property.
10. No nails, screws, mounts, or adhesive hangers except standard picture hooks, shade brackets and curtain rod brackets may be placed in walls, woodwork or any part of the Premises or Property.
11. All appliances, equipment, fixtures and systems on or serving the Premises shall only be used in accordance with the manufacturers operating instructions and shall not be removed. Tenant shall be monetarily responsible for all repairs to the premises, fixtures, appliances and equipment therein that have been damaged by Tenant's misuse, waste, or neglect, or that of the Tenant's family members, agents, pets, or visitors.
12. Landlord informs the Tenant the plumbing, sewer, and/or septic system of the Premises is not designed to accept many types of items, included but not limited to, cooking grease, food, paper napkins, diapers, sanitary products, excessive toilet paper, or any non-bodily waste. Tenant is monetarily responsible for repairs for any and all issues caused by improper use by the Tenant.  Improper use is considered to be anything but human waste and tissue paper. Landlord shall be responsible for sewer stoppages caused by defective plumbing, tree roots, or acts of nature.
13. Any product or material that is a potential environmental hazard shall only be disposed of in accordance with all applicable federal laws and regulations.
14. Tenants are responsible for having carpets *professionally* steamed cleaned by a truck mounted unit and home professionally cleaned prior to their move-out condition report being completed. A charge of $300 will be processed against the security deposit should it apply.
15. Tenant is strongly advised to obtain and maintain Renter's insurance policy and understands the Landlord nor Property Manager have insurance that protects the Tenant's personal belongings under any circumstance including, but not limited to, damage or loss caused by failure of a Landlord supplied appliance.
16. Due to buried water, gas, and cable utility lines, Tenant shall not dig on property for purpose of gardening or planting. Planters can be placed above ground only.
17. Tenant must notify Landlord or Property Manager immediately of any sign of water damage, leaks, roofing or plumbing issues.  If notification is not given, Tenant may be responsible for damages caused by Tenant negligence or misuse. Tenant shall know where and how to shut off the main water valve in case of emergency. Tenant agrees to use a shower curtain in the absence of a fully tiled or glass enclosure.
18. Garbage cans must be stored in back of property except on day of garbage pickup. Garbage cans are to be placed at the end of driveway on pick up days (not on grassy areas, between mailboxes or in the street) and promptly returned to the back side of property, garage, out of view from the street.
19. Any guest occupying the Premises without prior written consent, staying over twenty (20) consecutive days within one calendar month, will be considered an unauthorized

Occupant. Unauthorized Occupant(s) shall be required to vacate premises within (3) three days to cure or submit an online rental application to be considered as an add on to Lease.
20. Landlord shall be responsible for reasonable repairs that are not the result of abuse, misuse or negligence of the Tenant or that of the Tenant's family members, agents, or visitors. Additional time may be necessary for repairs requiring quotes, involving insurance claims, or appliance replacements.
21. Tenant will, at Tenant's sole expense, keep and maintain the Premises in good, clean and sanitary condition during the Lease term and any renewal thereafter.
22. Tenant shall promptly notify Landlord or Property Manager of any damage, defect or destruction of the Premises, or in the event of the failure of any of the appliances or equipment. Landlord or Property Manager will use best efforts to repair or replace any such damaged or defective area, appliance or equipment in a reasonable amount of time.
23. Tenants are prohibited from contacting or speaking with the legal owner of property directly unless written consent has been signed by all parties of this agreement. Platinum Property Management Services, Inc. has been hired as the Property Manager for the Landlord and has total authority over the Lease. Tenants are advised to contact Platinum Property Management Services, Inc. immediately if the owner/landlord makes direct contact with them.
24. All Ring cameras installed by Tenant shall be removed from Premises prior to turning over possession. Tenant shall ensure the doorbell provided at Move-In is installed and in working order at time of the move-out assessment. Tenant acknowledges that a $150 charge and/or actual cost to repair/replace doorbells appropriately shall be assessed upon Tenant's failure to comply with the foregoing two sentences.
25. Tenant shall be responsible for maintenance items, including, but not limited to, the following:

   1. Replacing any and all batteries,
   2. Draining clogged sinks and garbage disposals
   3. Resetting any tripped electrical breakers
   4. Resetting GFCI outlets
   5. Replacing burned out light bulbs
   6. Replacing HVAC filters
   7. Filling or re-filling propane tanks

By initialing below, you acknowledge and agree to the terms in Section 4.

X _____*NP*_____
Natasha N. Powell

10

Platinum Property Management Services, Inc.

212 Kelly Mill Rd • Cumming, GA 30040
(678) 710-8056



# 5
# Pet and/or Animal Addendum

## 5.1  LANDLORD & TENANT AGREE AS FOLLOWS:

This Addendum is attached to and made a part of that certain Agreement dated  08/01/2025  for the premises located at:

4755 Agate Dr
Alpharetta, GA 30022

1. Permission is hereby given for Tenant's pet, described below, to be kept within the Premises. Such permission is being given with the express understanding and agreement by Tenant that pet, when taken in and out of the Premises, will be kept on a leash or caged and under full control at all times. Further, when walking pet, Tenant will keep pet away from public places, lawns, and sidewalks of all residences in neighborhood or buildings in complex, whichever is applicable herein. Tenant will be responsible for cleaning up pet droppings. Tenant shall be responsible for all damage to the Premises or grounds by reason of having a pet therein or thereon. Landlord may bill Resident for damage caused by pet, which amount shall be paid no later than with the following month's rent.

2. Said pet will not annoy, bother, or be permitted to annoy or bother other residents of the neighborhood or complex, or the public within the area. If, in the sole discretion of Landlord or Property Manager, said pet becomes a nuisance, bothersome, or an annoyance to the public, neighbors, or other residents, or becomes a threat to public health or safety, then, at the written direction of Landlord or Property Manager to the Tenant, Tenant shall, within five (5) days thereafter, remove said pet from the Premises or face legal remedies, including, but not limited to, termination of the Agreement to which this Addendum applies.

***Service Animal or ESA animal*** Owner does not require a deposit or fee for a service animal, comfort animal, or emotional support animal as defined by the Americans with Disabilities Act, as amended with proper letter documentation and to be updated annually.  However, the owner of the animal is liable for any damages caused by the animal above and beyond normal wear and tear a human tenant might reasonably cause.  This includes, but not limited to, teeth marks on trim, carpet torn by animals digging, and carpet soiled by animal waste or vomit.  Sec. 504, Title II, Americans with Disability Act.

3. Tenant agrees to pay **$400.00 per pet** as a nonrefundable pet fee, of that $100 per pet is processed to Platinum Property Mgmt,  for the privilege of maintaining said pet on Premises, if applicable. Said nonrefundable pet fee is paid in addition to, and not in lieu of, Tenant's responsibility for all damages caused by pet, above. Tenant agrees that only the pet named and described below will occupy the premises. No additional or different pet is authorized under this Agreement.

4. Tenant is authorized to have only the pet(s)/ Service animal(s) or ESA animal(s) listed below.  No pet offspring are allowed. Tenant must provide proof of vaccination of pet, where same is required by law, for communicable diseases prevalent in species of pet, including, but not limited to, rabies.

5. Fish tanks may be no larger than 10 gallons. Birds must be caged at all times. No other animals, reptiles, or insects are permitted, including, but not limited to, livestock or farm animals, exotic or jungle animals, pigs, skunks, ferrets, monkeys, snakes, lizards, turtles, hamsters, and gerbils.

6. Tenant agrees to abide by all applicable laws, community association covenants and rules and regulations regarding the keeping of animals or pets in the areas and locale of the Premises, including, but not limited to, leash laws, licensing laws, and laws regarding vaccinations and inoculations.

## 5.2  PET INFORMATION

Tenant agrees that only the pet(s) named and described below will occupy the premises:

- Bengi, Shih-Zhu, 12.0 lbs, 15 years

By signing below, you acknowledge and agree to the terms in Section 5.

X *Natasha Powell*
Lessee                                IP Address: 108.227.71.88
                                      05/22/2025 02:47pm EDT

**Platinum Property Management Services, Inc.**

212 Kelly Mill Rd • Cumming, GA 30040
(678) 710-8056



# 6
## Sign and Accept

### 6.1  DISCLAIMERS

**GENERAL:** Tenant and Landlord acknowledge they have not relied upon any advice, representations or statements of the Property Manager or Brokers and waive and shall not assert any claims against Property Manager and Brokers involving the same. Tenant and Landlord agree that Property Manager or Broker shall not have any responsibility to advise Tenant and/or Landlord on any matter including but not limited to the following: any matter which could have been revealed through a survey, title search or inspection of Property or Premises; the condition of the Premises or Property, any portion thereof, or any item therein; building products and construction and repair techniques; the necessity of any repairs to Premises or Property; mold; hazardous or toxic materials or substances; termites and other wood destroying organisms; the tax or legal consequences of this transaction; the availability and cost of utilities or community amenities; any condition(s) existing off the Premises and Property which may affect the Premises or Property; and the uses and zoning of the Premises and Property whether permitted or proposed. Tenant and Landlord acknowledge Property Manager or Broker is not an expert with respect to the above matters, if any of these matters or any other matters are of concern, Tenant should seek independent expert advice relative thereto. Tenant and Landlord acknowledge Property Manager or Broker shall not be responsible to monitor or supervise any portion of any construction or repairs to the Premises or Property and such tasks clearly fall outside the scope of real estate brokerage services.

**CONSTRUCTION DISCLAIMER:** Tenant acknowledges the Premises, or portions thereof, may have been constructed at times when different and less stringent building codes were in place. Tenant shall not assume the Premises or Property are energy efficient or contain products or features designed to protect Tenants against injuries or damage that might exist if the Premises and Property had been constructed in accordance with all current building codes.

**NEIGHBORHOOD CONDITIONS:** Tenant acknowledges in every neighborhood there are conditions which different Tenants may find objectionable. It shall be Tenant's duty to become acquainted with any present or future neighborhood conditions which could affect the Premises or Property including without limitation land-fills, quarries, high-voltage power lines, cemeteries, airports, stadiums, odor producing factories, crime, schools serving the Premises and Property, political jurisdictional maps and land use and transportation maps and plan. If Tenant is concerned about the possibility of a registered sex offender residing in a neighborhood in which Tenant is interested, Tenant should review the Georgia Violent Sex Offender Registry available on the Georgia Bureau of Investigation Website at www.gbi.georgia.gov.

**SECURITY DISCLAIMER:** Tenant acknowledges: (1) crime can occur in any neighborhood including the neighborhood in which the Premises and Property is located; and (2) while Landlord may from time to time do things to make the Premises and Property reasonably safe, Landlord is not a provider or guarantor of security in or around the Premises and/or the Property. Tenant acknowledges that prior to occupying Property, Tenant carefully inspected all windows and doors (including the locks for the same) and all exterior lighting and found these items: (a) to be in good working order and repair; and (b) reasonably safe for Tenant and Tenant's household and their invitees, licensees and guests knowing the risk of crime. If during the term of the Lease any of the above items become broken or fall into disrepair, Tenant shall give notice to Landlord or Property Manager of the same immediately.

**AGENCY DISCLOSURE:** In this Lease, the term "Broker" shall mean a licensed Georgia real estate broker or brokerage firm and, where the context would indicate, the Broker's affiliated licensees and employees. No Broker In this transaction shall owe any duty to Tenant or Owner/Landlord greater than what is set forth in their brokerage engagements and the Brokerage Relationships in Real Estate Transactions Act, O.C.G.A. § 10-6A-1 et. seq.; The Broker(s) that are party(s) to this Agreement are representing the Landlord and/or Tenant.

**BROKERAGE:** The Listing Broker in this Transaction, representing the Landlord as a client, is Platinum Property Management Services, Inc.. Unless otherwise provided for herein, the Listing Broker will be paid a commission by the Landlord.

**MATERIAL RELATIONSHIP DISCLOSURE:** For the purposes of this Agreement, a material relationship shall mean any actually known personal, familial, or business relationship between the broker or the broker's affiliated licensees and a client which would impair the ability of the broker or affiliated licensees to exercise fair and independent judgment relative to another client. Any such material relationship will be disclosed in a separate Material Relationship Disclosure Exhibit.

**DISCLOSURE RIGHTS:** Landlord or Property Manager may disclose information about Tenant to law enforcement officers, governmental officials and for business purposes.

This is a legally binding document. By typing your name, you are consenting to use electronic means to (i) sign this contract (ii) accept lease agreement and addenda. By executing this Lease Agreement, you acknowledge that the Premises is fit for Residential occupancy.

**FAIR HOUSING DISCLOSURE:** Landlord and Property Manager are committed to leasing and managing the Premises without regard to race, color, national origin, religion, handicap, familial status, sex, sexual orientation or gender identity.

**PROPERTY LOSS:** Storage of personal property by Tenant in Premises or in any other portion of Property shall be at Tenant's sole risk. Tenant has been advised to obtain renters insurance that provides comprehensive insurance for damage to or loss of Tenant's personal property. Tenant agrees to look solely to Tenant's insurance carrier for reimbursement of losses resulting from such events and hereby indemnifies and agrees to hold Landlord and Property Manager harmless from any claims, causes of action or damages relating to the same. Landlord or Property Manager shall have no responsibility or liability for Tenant's personal property.

**MORTGAGEE'S RIGHTS:** Tenant's rights under this Lease shall at all times be automatically junior and subordinate to any deed to secure debt which is now or shall hereafter be placed on the

Premises or Property. If requested, Tenant shall execute promptly any document that Landlord may request to effectuate the above.

**EXHIBITS:** All Exhibits/Addenda that are attached with the Lease are made a part of the Agreement and if any such Exhibit/Addenda conflicts with any preceding paragraph, said Exhibit/Addenda shall control.

## 6.2  LICENSE INFORMATION

Broker: Platinum Property Management Services, Inc.

MLS Office Code: PPMS01

Brokerage License Number: H-62185

Broker's Affiliated Licensees

- Lisa Ragsdale - Lic #350149
- Maria Giraldo - Lic #349602
- Philip Earley - Lic #173258
- Laura Birr - Lic #368253
- Jeni Granade - Lic #374034
- Todd Earley - Lic #385731
- Sabina Celosmanovic - Lic #397161

## 6.3  ACCEPTANCE

This is a legally binding document. By typing your name, you are consenting to use electronic means to (i) sign this contract (ii) accept lease agreement and addenda. By executing this Lease Agreement, you acknowledge that the Premises is fit for Residential occupancy.

X *Natasha Powell*
Lessee            IP Address: 108.227.71.88
                  05/22/2025 02:48pm EDT

X *Lisa Ragsdale*
Lessor            IP Address: 32.140.210.90
                  05/22/2025 02:55pm EDT